1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LIONEL TATE, SR.,                                    CV F   02 5707 AWI SMS P

               Plaintiff,

               FINDINGS AND RECOMMENDATIONS
      v.                     REGARDING MOTION FOR SUMMARY
                         JUDGMENT (Doc. 53, 54)

J.W. HUSKEY, et. al.,

               Defendants.

_____/

    Lionel Tate ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

## A.  RELEVANT PROCEDURAL HISTORY

    Plaintiff filed the instant action on June 13, 2002.  On July 26, 2002, Plaintiff filed an Amended Complaint.  (Doc. 7.)  The Court dismissed the Complaint with leave to amend on November 25, 2002.  On December 6, 2002, Plaintiff informed the Court that he did not wish to file another Amended Complaint but instead wished to proceed on the claims found cognizable by the Court.  (Docs. 9, 10.)  Thus, on December 23, 2002, the Court issued Findings and Recommendations that the action proceed on Plaintiff's retaliation claim against Defendant Pina,

a deprivation of property claim against Defendant Wilson, and a supervisory liability claim

against Defendants Huskey and Newton and that all remaining claims and defendants be

dismissed from the action.  The Court also issued an Order finding service appropriate for

Defendants Pina, Wilson, Huskey and Newton.  (Docs. 11, 12.)

On April 9, 2003, Defendants filed a Motion to Dismiss arguing that Plaintiff had

suffered three or more strikes pursuant to 28 U.S.C. § 1915(g).  On November 12, 2003, the

Court issued Findings and Recommendations that Defendant's Motion to Dismiss be denied.

The Recommendation was adopted in full by the District Judge on January 6, 2004.

Defendants filed an Answer and Motion for Judgment on the Pleadings on January 12,

2004.  (Docs. 37, 38.)  The Court issued Findings and Recommendations that the Motion for

Judgment be denied in part and Plaintiff was granted leave to file an Amended Complaint only as

to his request for injunctive relief. (Doc. 45.)   Plaintiff did not file an Amended Complaint and

the District Court adopted the Findings and Recommendations on September 13, 2004.  (Doc.

46.)

On December 30, 2004, Defendants filed a Motion for Summary Judgment and a separate

Statement of Undisputed Facts.  (Docs. 53, 54.)  Plaintiff filed his Opposition to the Motion for

Summary Judgment on January 31, 2005.  (Doc. 56.)

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine

issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be

made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions

on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

1  upon motion, against a party who fails to make a showing sufficient to establish the existence of

2  an element essential to that party's case, and on which that party will bear the burden of proof at

3  trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the

4  nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a

5  circumstance, summary judgment should be granted, "so long as whatever is before the district

6  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

7  satisfied." Id. at 323.

8       If the moving party meets its initial responsibility, the burden then shifts to the opposing

9  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

10  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

11      In attempting to establish the existence of this factual dispute, the opposing party may not

12  rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

13  form of affidavits, and/or admissible discovery material, in support of its contention that the

14  dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

15  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

16  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.

17  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

18  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

19  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

20      In the endeavor to establish the existence of a factual dispute, the opposing party need not

21  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

22  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

23  trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

24  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

25  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

26  amendments).

27      In resolving the Motion for Summary Judgment, the Court examines the pleadings,

28  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3

any.  Rule 56(c).  The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (*citing* <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(*per curiam*).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (*citation omitted*).

## C. UNDISPUTED FACTS[1]

1.   Plaintiff was incarcerated at Avenal State Prison ("ASP") at times material to the matters at issue and following his conviction for one count of forcible object rape and two counts of rape by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury.  (Exhibit ["Exh."] A, Attach. 1 to Defendant's Statement of Undisputed Facts ["Def.'s Statement."].)

2.   Defendant Huskey was the Warden, Defendant Newton was a Facility Captain, Defendant Pina was a Correctional Lieutenant and Defendant Wilson was the Appeals Coordinator at ASP at the time relevant to the matters in this action.[2] (Amended Complaint ["Compl."] at § III.)

### *Placement into Administrative Segregation*

3.   On April 25, 2001, Plaintiff filed a grievance against Lieutenant ("Lt.") Aviles, alleging that she had accused him of placing a document containing improper language into the medical box.  Plaintiff also alleged that Lt. Aviles shouted at

---

[1]The following facts are undisputed for the purpose of this Motion.

[2]Plaintiff states that Defendant's suggestion that Defendant Wilson was the Appeals Coordinator at ASP is false.  However, he offers no evidence to support his assertion.  Thus, this fact is deemed undisputed.

1  him in an unprofessional manner and indicated that she did not respect him for his

2  crime after reading his file.  Plaintiff stated that Aviles was trying to provoke him

3  into doing something that would allow her to write him up or "incite violence

4  towards" him.   (Exh. A at 9-12, Def.'s Statement; Amended Compl. at 4.)

5  4.  On May 1, 2001, Plaintiff signed a Rights and Responsibility Statement making

6  the complaint against Lt. Aviles.  (Exh A at 20, Def.'s Statement.)  The form was

7  received by Lt. Pina who immediately placed Plaintiff into administrative

8  segregation ("ad/seg.").  (Amended Compl. at 2-3, 5; Exh. A at 21, Def.'s

9  Statement; Opposition to Motion for Summary Judgment ["Opposition"] at 2.)

10  5.  California Code of Regulations, Title 15, § 3335, states that when an inmate's

11  presence in the institution "presents an immediate threat to the safety of the

12  inmate or others, endangers institution security or jeopardizes the integrity of an

13  investigation of an alleged serious misconduct or criminal activity, the inmate

14  shall be immediately removed from general population and placed in

15  administrative segregation."[3] (Exh. C, Def.'s Statement; Opposition at 9.)

16  6.  An inmate who alleges staff serious misconduct must be placed in administrative

17  segregation to preserve the integrity of the investigation.  (Exh. B, Def.'s

18  Statement.)

19  7.  The temporary segregation of the inmate also prevents him from soliciting other

20  inmates to substantiate his claims and prevents staff from retaliating against him.

21  (Exh. B, ¶ 4, Def.'s Statement.)

22  8.  An administrative segregation review is held within 24 hours of an inmate's

23  segregation.  The hearing officer ensures that the placement of the inmate into

24  administrative segregation was proper.  (Exh. B, ¶ 5, Def.'s Statement.)

25  9.  Plaintiff's 24 hour ad/seg review was held on May 2, 2001.  (Exh. A at 21-23.)

26

27

28

---

[3]Although Plaintiff disputes this fact in his Opposition saying that the investigation referred to is investigations of "inmate" misconduct and not "staff, " he offers no evidence to support his interpretation of the statute.

Defendant Newton determined that Plaintiff should remain in ad/seg pending completion of the investigation into his claims against Lt. Aviles. (Exh. A at 21-23, Def.'s Statement; Amended Compl. at 5; Opposition at 9.)

10.   Within ten (10) days, the inmate has an Institutional Classification Committee ("ICC") hearing to review whether the inmate is properly housed in administrative segregation. (Exh. B at ¶ 6, Def.'s Statement.)

11.   Plaintiff's hearing was held on May 10, 2001.  The ICC elected to retain Plaintiff in ad/seg to maintain the integrity of the investigation into his claims against Lt. Aviles. (Exh. A at 23, Def's Statement; Amended Compl. at 6.)

12.   An inquiry is then conducted to determine whether the inmate's allegations of staff misconduct can be substantiated.  Once the inquiry is completed, the investigating employee types up a report which is submitted to his supervisor for review.  The Associate Warden determines whether the inquiry was thorough and complete and if the report is approved by the Associate Warden, the ad/seg counseling staff is informed that the inquiry is complete.  The Correctional Counselors then schedule the inmate for an appearance before the ICC to determine where the inmate can be appropriately housed. (Exh. B at ¶ 7, Def.'s Statement.)

13.   On May 1, 2001, immediately after placement in ad/seg, Plaintiff was interviewed by Sergeant Rankin.  During the interview, Plaintiff stated that he had not been threatened by Lt. Aviles and that he had not been threatened by any other inmate. (Exh. A at 22, Def.'s Statement.)

14.   On May 15, 2001, Lt. Pina conducted a videotaped interview with Plaintiff to discuss the allegations of the grievance.  During the interview, Plaintiff stated that he could not recall Lt. Aviles using profanity during their encounter.  Plaintiff also stated that Lt. Aviles did not shout out his commitment offense but stated that she stated she did not respect him for the crime he committed.  Plaintiff again stated that following the incident, he did not feel threatened by other inmates.  (Exh. D

1   [Videotape of Interview conducted May 15, 2001], Def.'s Statement.)

2   15.   During the interview, Plaintiff asked Defendant Pina if placement of inmates in

3   ad/seg was a "rule handed down by the warden?"  Defendant did not respond

4   verbally.[4]  Plaintiff then went on to say that he understood if it was a rule because

5   lots of inmates file "bogus complaints against staff" and that he "figured the

6   [Warden] would want to stop as much of that as possible."  Lt. Pina advised

7   Plaintiff that an inmate who makes allegations of serious staff misconduct is

8   removed from the area to protect the integrity of the investigation.  (Exh. D,

9   Def.'s Statement;  Amended Compl. at 6.)[5]

10   16.   On May 20, 2001, Lt. Pina issued his first level response to Plaintiff's grievance.

11   Lt. Pina determined that the allegations of Plaintiff's grievance did not occur and

12   that Plaintiff became upset because Lt. Aviles raised her voice at him.  (Exh. A at

13   25-26, Def.'s Statement.)

14   17.   On May 25, 2001, Chief Deputy Warden Powers issued a response to the fact

15   finding inquiry noting that Plaintiff's allegations against Lt. Aviles had not been

16   sustained.  (Exh. A at 27-28, Def.'s Statement; Amended Compl. at 6.)

17   18.   On May 30, 3001, Associate Warden Korstjens signed off on the first level

18   response, partially granting Plaintiff's appeal.  Associate Warden Korstjens noted

19   that Plaintiff's allegations had been investigated and reviewed by administrative

20   staff.  (Exh. A at 29, Def.'s Statement.)

21   19.   On June 7, 2001, Plaintiff appeared before the ICC.  The ICC noted that Plaintiff

22   had been placed into ad/seg pending the completion of an on-going investigation

23   into his allegations of staff misconduct.  The ICC also noted that the investigation

---

[4]The quotations reference the words used on the videotape provided by Defendants and viewed by the Court. (Exh. D, Def.'s Statement.)

[5]Plaintiff adamantly states in his Opposition that Defendant Pina admitted that this was a policy of the Warden to curb the filing of staff complaints.  However, the videotape shows Plaintiff *suggesting* to Defendant Pina that placement in ad/seg was a policy of the Warden.  The evidence viewed does not support Plaintiff's contentions. Thus, this fact is undisputed.

was complete and that the allegations were determined to be unfounded.  The ICC elected to release Plaintiff back to the general population.  (Exh. A at 24, Def.'s Statement.)

20.  Plaintiff was released back into the general population on June 8, 2001.  (Exh. A at 3, Def.'s Statement, Amended Compl. at 6.)

21.  When an allegation of staff misconduct is made, the entire process, from when the allegation is first made, through the inquiry process and subsequently released into general population, can take over a month.  The inquiry itself can take at least a month, and the subsequent processing can take an additional two weeks.  (Exh. B at ¶ 8.)

***Loss of Plaintiff's Property***

22.  On May 1, 2001, prior to his placement into ad/seg, Plaintiff's property was inventoried and boxed up by Correctional Officers Borrego and Madrid.  Plaintiff refused to sign the property inventory sheet confirming the items that were stored.  (Exh. A at 30, Def.'s Statement; Amended Compl. at 5.)

23.  Plaintiff received his property on June 9, 2001, 1 day after his release from ad/seg.  (Amended Compl. at 5.)

24.  On August 13, 2001, two months after being released from ad/seg, Plaintiff filed an inmate grievance claiming that items were missing from his property.  The grievance was denied at the informal level.  The response indicated that Plaintiff had arrived at ad/seg with five boxes of property and that he signed for five boxes of property when he was released back into the general population.  Plaintiff was informed that if items were missing he would need to address it with the officers who had inventoried the property.  (Exh. A at 31, Def.'s Statement; Amended Compl at 6; Opposition at 11.)

25.  Plaintiff's grievance does not reference Defendant Wilson or allege that Defendant Wilson was ever in possession of his property.  Instead, the grievance alleges that while housed in ad/seg, *unnamed officers* went into his property to

1  retrieve items, and either placed the items in the wrong box or left them out and

2  other officers placed them in the wrong box.  (Exh. A at 31-32, Def.'s

3  Statement.)[6]

4  ***Plaintiff's Administrative Appeals***

5  26.  Both during and after his confinement in ad/seg, Plaintiff availed himself of the

6  administrative appeals process.  A review of the appeals shows that he filed a

7  grievance on May 2, 2001, claiming that his placement in ad/seg was in retaliation

8  for filing a grievance.[7]  (Exh. A at 37-38; Amended Compl. at 6.)

9  27.  On June 19, 2001, Plaintiff filed a grievance claiming that his A-1-A status was

10  revoked, and that he had not received his privilege card.  (Exh. A at 44-46, Def.'s

11  Statement.)  The second level appeal response noted that upon Plaintiff's release

12  from ad/seg, his classification as A-2-B.  Plaintiff was advised that his

13  classification of A-1-A was reinstated on June 30, 2001, and he had received his

14  privilege card.  (Exh. A at 52-53, Def.'s Statement.)

15  28.  On July 12, 2001, Plaintiff filed a grievance that he had not received copies of the

16  chronos from his Institutional Classification hearings.  (Exh. A at 57-60.)

17  29.  On September 10, 2001, Plaintiff filed a grievance claiming that he had received

18  legal mail through the regular mail.  (Exh. A at 61-63, Def.'s Statement.)

19  30.  On December 10, 2001, Plaintiff filed a grievance regarding receipt of his

20  quarterly package.  (Exh. A at 70-71, Def.'s Statement.)

21  31.  Since filing his grievance against Lt. Aviles, Plaintiff has filed over twenty (20)

22

23  [6]Although the Amended Complaint clearly states that his property was taken from him by Defendant Wilson (Amended Compl at 6), Plaintiff concedes, in his Opposition, that he "was not alleging that Appeals Coordinator R. Wilson was responsible for his missing property" but that his allegations in the Complaint are against "Correctional Officer E. Wilson."  However, there is no evidence in the record that the Defendants are referring to "R.Wilson." Defendant "E. Wilson was served by the U.S. Marshal and signed a waiver of service on March 14, 2003. (Docs. 18, 19.)  In addition, the grievance filed by Plaintiff and referred to in this fact, makes no mention of *anyone* by the name of Wilson.  Plaintiff presents no evidence to dispute this fact and thus, it is undisputed.

27  [7]Plaintiff contends that the filings that occurred following the alleged retaliation is evidence of the continued retaliation against him.  However, he presents no evidence to dispute the *fact of* these filings.  Thus, this fact is undisputed.

1    grievances alleging a variety of misconduct, including complaints against staff.

2    (Exh. E [Inmate Parolee Appeals Tracking System for Inmate Tate], Def.'s

3    Statement.)

4    **D. ANALYSIS**

5        *1. Summary of Complaint*

6        In his Amended Complaint, Plaintiff states that on April 24, 201, he was called into Lt.

7    Aviles' office when she began insisting that he had placed a medical form using inappropriate

8    language in the medical box.  Plaintiff says that Lt. Aviles arrived at this conclusion based on the

9    fact that Plaintiff had put an appeal (602) form in the box against Nurse Brown, however, he was

10   not responsible for the letter.  At this time, Lt. Aviles began shouting that she knew it was

11   Plaintiff and that she would have him moved to another yard.  Lt. Aviles then pulled his file and

12   noted the crimes for which Plaintiff is serving time.  Lt. Aviles indicated that she did not respect

13   him because of the nature of his crimes and that Plaintiff only filed appeals against female staff.

14   (Amended Compl. at 3-4.)  Plaintiff states that Aviles was trying to provoke him into saying or

15   doing something that would allow her to write him up or incite violence against him by other

16   inmates.  On April 25, 2001, Plaintiff filed a grievance against Lt. Aviles for staff misconduct

17   reciting the facts alleged here.

18        On May 1, 2001, Lt. Pina called Plaintiff into his office concerning the grievance against

19   Aviles.  (Amended Compl. at 5.)   Lt. Pina informed Plaintiff that he had not signed the citizen

20   complaint form.  Lt. Pina also informed him that if he signed the form, he would be placed in

21   administrative segregation, if he did not sign, he would be moved to another yard.  Id.  When

22   Plaintiff asked why he would be placed in ad/seg for signing the form, Lt. Pina responded that

23   the form had to be signed for him to investigate the alleged staff misconduct complaint against

24   Lt. Aviles.  Id.  Plaintiff signed the form and was placed in ad/seg. pending an investigation into

25   allegations of staff misconduct.  Id.

26        Plaintiff alleges that Defendant Newton, who reviewed Defendant Pina's placement,

27   determined that the placement in ad/seg was justified.  (Amended Compl. at 7.)  Plaintiff states

28   that "Newton knew his order holding me in ad/seg was in retaliation for [him] filing the citizen

1   complaint against staff misconduct." Id.  In addition, Plaintiff alleges that Defendant Newton

2   knew of the Warden's policy of placing inmates in ad/seg when they filed grievances against

3   staff.  Id.

4       Plaintiff indicates that all of his property was inventoried outside of his presence, boxed

5   up and sealed.  (Amended Compl. at 6.)  It was then given to Plaintiff and accompanied him to

6   ad/seg where it was taken from him by Officer Wilson and stored.  Id.  Plaintiff states he was

7   released from ad/seg on June 9, 2001, and discovered that several of the items listed on his

8   property inventory slip were missing.  (Amended Compl. at 6.)  Plaintiff brought this to the

9   attention of Correctional Officer Mares who informed Plaintiff that he had to file a 602 regarding

10  the missing property.  Id.  Plaintiff filed a 602 appeal form on August 13, 2001.  Id.

11      *2. Claims for Relief*

12          **A. Retaliation**

13      "Within the prison context, a viable claim of First Amendment retaliation entails five

14  basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

15  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

16  exercise of his First Amendment rights, and (5) the action did not reasonably advance a

17  legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

18      Defendants argue that Plaintiff fails to demonstrate that the actions taken by Defendant

19  Pina was not "because of" Plaintiff's filing a grievance, did not chill his exercise of his First

20  Amendment rights and advanced a legitimate penological goal.  Plaintiff was placed in

21  administrative segregation for his own protection as he alleged that in reviewing his file, Lt.

22  Aviles made reference to his crime and attempted to provoke him into taking action that "could

23  incite other inmates against him."  (Undisputed Fact No. 3.)   In addition, the placement was

24  necessary to preserve the integrity of the investigation by protecting Plaintiff from staff

25  retaliation and from soliciting other inmates to substantiate his claims.  (Undisputed Fact Nos. 5,

26  6, 7, 9, 11, 15, 19.)  In support of the above, Defendant's present the Court with a copy of

27  Section 3335 of Title 15 of the California Code of Regulations.  Section 3335(a) provides:

28      When an inmate's presence in an institution's general inmate population presents

11

1

>an immediate threat to the safety of the inmate or others, endangers institution
>security or jeopardizes the integrity of an investigation of an alleged serious
>misconduct or criminal activity, the inmate shall be immediately removed form
>general population and placed in administrative segregation . . .

2

3   (Exh. C, Def.'s Statement; Undisputed Fact No. 5.)   Defendants assert that this statute

4   authorized Defendant Pina and the institution to place Plaintiff in administrative segregation on

5   the basis stated above and in relation to his allegation of serious staff misconduct.  Defendants

6   also produce evidence in the form of a Declaration of Arthur Godfrey, Associate Warden at

7   Avenal State Prison. (Exh. B, Def.'s Statement.)   Mr. Godfrey states that when inmates allege

8   serious staff misconduct, they must be placed in administrative segregation to preserve the

9   integrity of the investigation, protect the inmate from staff retaliation and to protect from the

10  inmate soliciting other inmates to substantiate his claims. Id.  Based on the above, Defendant's

11  assert that Plaintiff's placement in ad/seg advanced a legitimate penological goal goals of

12  preserving the integrity of the investigation and protecting plaintiff both from other inmates and

13  from staff retaliation.  (Motion at 8.)

14      Defendant's also assert that Plaintiff's First Amendment right to file grievances was not

15  "chilled" or infringed upon as is required to state a viable claim of retaliation.  In support of this,

16  Defendants provide the Court with a copy of Plaintiff's Inmate/Parolee Appeals Tracking Report.

17  (Exh. E, Motion.)  This report shows that from April 25, 2001, when the grievance against Lt.

18  Aviles was filed, to the date of Defendant's submission of the Motion for Summary Judgment on

19  December 30, 2004, Plaintiff filed twenty one (21) grievances.  (Undisputed Fact No. 31.)

20  These grievances were for a host of reasons and included staff complaints.  (Exh. E, Motion.)

21      Defendants have adequately demonstrated that although some adverse action was taken

22  against Plaintiff, he was placed in administrative segregation for the purposes outlined and

23  authorized by statute and not for the improper purpose of retaliation.  Defendant's also show that

24  the action was for a legitimate penological purpose and that Plaintiff's First Amendment rights

25  were not chilled.  Accordingly, Defendant's have met their burden of demonstrating that there is

26  no disputed issue of fact with respect to Plaintiff's retaliation claim against Defendant Pina and

27  the burden now shifts to Plaintiff to establish that a genuine issue as to any material fact actually

28  exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

1    In attempting to establish the existence of this factual dispute, the opposing party may not

2    rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

3    form of affidavits, and/or admissible discovery material, in support of its contention that the

4    dispute exists.  Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.

5    In his Opposition, Plaintiff argues that Section 3335 does not authorize placement in

6    ad/seg when an inmate files staff complaint because the serious misconduct referred to in the

7    statute is "inmate" misconduct and not "staff" misconduct.  (Opposition at 4.)  However, other

8    than his interpretation of the statute, Plaintiff provides no evidence to support his assertion.

9    Section 3335 does not state that the misconduct referred to is misconduct of staff *or* inmates.

10   The statute states that when an inmates placement in the general population presents an

11   *immediate threat* to the safety of the *inmate or others, endangers institutional security or*

12   *jeopardizes the integrity of the investigation of an allegation of serious misconduct*, the inmate

13   shall be placed in ad/seg.  (Exh. C, Motion.)(emphasis added.)  Thus, regardless of whether the

14   misconduct was by staff or an inmate, such misconduct could jeopardize the safety of staff, the

15   inmate and/or other inmates, the integrity of an investigation into the misconduct and/or the

16   security of the institution.

17   Plaintiff also contends that his placement in ad/seg was dependent on his signing the

18   Rights and Responsibility form (CDC 1858.)  (Opposition at 14-15.)  According to the evidence

19   provided by Defendants, Plaintiff filed his grievance against Lt. Aviles on April 25, 2001, yet he

20   was not placed immediately placed in ad/seg.  According to the Amended Compl., Defendant

21   Pina informed Plaintiff that an investigation into the alleged misconduct could not be made until

22   Plaintiff signed the Rights and Responsibility and that his signing the form would require his

23   placement into ad/seg.  (Amended Compl. at 5-6; Opposition at 15;  Exh. A, at 20, Motion.)

24   Plaintiff signed the form on May 1, 2001, and was immediately placed in ad/seg for the safety

25   and security of the institution. (Exh. A at 21, Motion.)   Defendant Pina's statement is supported

26   by the face of the Rights and Responsibility form which indicates that pursuant to Penal Code

27   Section 148.6, anyone wishing to file an allegation of misconduct by a peace officer must read

28   and sign the form.  (Exh. A at 20, Motion.)  The form further states that Plaintiff has a right to

1    have the allegations of misconduct investigated. Id.   Plaintiff concedes in his Opposition that his

2    placement was "pending the investigation being conducted into allegations of staff misconduct

3    towards [him.]  For this reason [he was] deemed a threat to the safety and security of the

4    institution, its staff and inmates," and the evidence produced by Defendant's supports the reasons

5    for his placement.  (Opposition at 15; Exh. A at 20-29, Motion; Exh. E, Opposition to Motion for

6    Judgment on the Pleadings ["Opposition to MJP"].)  Thus, contrary to Plaintiff's assertion that

7    his placement in ad/seg was solely dependent on his signing the form, it appears from the

8    undisputed evidence that initiation of the investigation was dependent on Plaintiff's signature.

9    Plaintiff's placement in ad/seg was to preserve the integrity of the investigation and for his own

10   protection as well as that of the institution.  (Undisputed Fact Nos. 3, 5, 6, 7, 9, 11, 15, 19.)

11          Plaintiff also alleges that his placement in ad/seg did not advance the legitimate

12   penological goal of protecting him from staff retaliation because the officers are often assigned to

13   the yard as well as administrative segregation.  (Opposition at 5.)  Again, Plaintiff provides no

14   evidence to support his contention.  Even assuming Plaintiff is correct, the undisputed facts show

15   that protection from staff retaliation was not the sole reason for his placement in ad/seg.  The

16   evidence provided by Defendant's shows that Plaintiff placement was because he was deemed a

17   threat to the safety of the institution and to protect the integrity of the investigation. (Exh. A at

18   21-24, Motion.)

19          Plaintiff argues in the Opposition that his rights were chilled because he was "denied jobs

20   that pay," he has been denied the use of his personal property and staff has filed false reports to

21   cover up the illegality of his placement in ad/seg.  (Opposition at 16.)

22          The injury asserted in retaliation cases is the retaliatory conduct's chilling effect on the

23   Plaintiff's First Amendment rights. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir.1997);

24   Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.2000).   The denial of jobs, the use of property and

25   that false reports were made are not rights protected by the First Amendment.  Although Plaintiff

26   may have some sort of rights with respect to these things, Plaintiff's allegation in his Amended

27   Complaint is that he was retaliated against for exercising his First Amendment right to file a

28

1  grievance against staff.  Thus, to succeed on his claim, Plaintiff must demonstrate that his right to

2  file a grievance was "chilled."  See, Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

3  The Ninth Circuit has noted that the proper First Amendment inquiry asks "whether an official's

4  acts would chill *or* silence a person of ordinary firmness from future First Amendment

5  activities." Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283 (9th Cir.

6  1999.)

7  Plaintiff states further in his Opposition that he "has not filed, or been allowed to file, any

8  other grievance against staff for misconduct with a CDC 1858."[8]  Id.  Plaintiff does not, however,

9  allege or provide evidence to support his assertion.

10  The Appeals Tracking report provided by Defendants demonstrates otherwise.  As noted

11  above, following the initiation of his grievance against Lt. Aviles, Plaintiff filed twenty one (21)

12  grievances concerning his employment, medical, property, funds, classification, mail and staff

13  complaints. (Exh. E, Motion.)  Plaintiff himself concedes that he filed several grievances relating

14  to issues stemming from and related to the very incident with Lt. Aviles and his subsequent

15  placement in ad/seg.  (Amended Compl. at ¶ II. C, Exhs. A, C, D, F, G, Opposition to MJP.)[9]

16  The Tracking Report further provides that on January 29, 2004, Plaintiff initiated an

17  administrative appeal for a "staff complaint" which was pending at the Director's level at the

18  time the instant Motion for Summary Judgment was filed. (Exh. E at 3, Motion.)  Plaintiff

19  presents no evidence to support his assertion that he was not allowed to file a grievances against

20

21

22  [8]Plaintiff's assertion is unclear.  Plaintiff states that "[s]ince Plaintiff filed the grievance against Lt. Aviles, with the CDC-1858 attached, Plaintiff has not filed, or been allowed to file, any other grievance against staff for misconduct, with a CDC-1858 attached, *prior to Plaintiff filing this action*."  (Opposition at 16.)  Thus, it appears

23  that Plaintiff stating both that he was precluded from filing grievances against staff *before* the filing of this action and *after* the filing of this action. It is unclear if Plaintiff means one or both of these.  However, because the chilling

24  effect must occur after an alleged retaliation of Plaintiff's First Amendment rights, the Court will assume, for the purposes of this Motion and Opposition, that Plaintiff means the latter.

25  [9]Exh. A concerned Plaintiff's privilege group and was filed on June 19, 2001 (Log No. 01-1165.); Exh. C

26  concerned Plaintiff's change in pay number/work position as a result of his placement in ad/seg and was filed on May 2, 2001 (Log No. 01-2147); Exh. D concerned Plaintiff's removal from the "PIA" list for his placement in

27  ad/seg and was filed on October 18, 2001; Exh. F, concerned the missing property as a result of his placement in ad/seg and was filed on August 13, 2001 (Log No. 01-1620.) and Exh. G concerned Plaintiff's request for chronos

28  from the ICC hearing related to his placement in ad/seg and was filed August 26, 2001 (Log No. 01-1678.)

1  staff.  Even assuming that Plaintiff's rights were chilled, Plaintiff has not presented evidence that

2  his placement in administrative segregation was for the improper purpose of retaliation.

3      Accordingly, based on the above, the Court finds Plaintiff has failed to meet his burden of

4  establishing that there is a genuine issue as to any material fact warranting trial.  Matsushita Elec.

5  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The Court will recommend

6  Summary Judgment be granted on the retaliation claim against Defendant Pina.

7                          **B.  Due Process - Property Deprivation**

8      In his Amended Complaint, Plaintiff alleges that his personal property was lost.  The Due

9  Process Clause protects prisoners from being deprived of property without due process of law,

10 Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their

11 personal property.  Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However, while an

12 authorized, intentional deprivation of property is actionable under the Due Process Clause, see

13 Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455

14 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor

15 unauthorized intentional deprivations of property by a state employee "constitutes a violation of

16 the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a

17 meaningful post-deprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517,

18 533 (1984).  Thus, where the state provides a meaningful post-deprivation remedy, only

19 authorized, intentional deprivations constitute actionable violations of the Due Process Clause.

20 An authorized deprivation is one carried out pursuant to established state procedures, regulations,

21 or statutes.  Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City

22 of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

23     In this case, the Amended Complaint alleges that following Plaintiff's release from ad/seg

24 on June 8, 2001, "several items on my property inventory was missing."  (Amended Compl. at

25 6.)  Defendants argue that the assertion of deprivation of property fails to state a claim for relief

26 and should be dismissed.

27     According to undisputed facts, Officers Borrego and Madrid inventoried and secured

28

1   Plaintiff's property prior to his placement in Administrative Segregation. (Undisputed Fact No.

2   22. Although Plaintiff alleges that Defendant Wilson took his property and placed it in ad/seg,

3   Plaintiff does not allege that Defendant Wilson is responsible for the property loss.  In fact,

4   Plaintiff states, in his grievance concerning the loss of his property, that while housed in ad/seg,

5   *"unnamed officers* went into his property to retrieve items, and either placed the items in the

6   wrong box or left them out and other officers placed them in the wrong box." (Exh. A at 31-32,

7   Def.'s Statement.)   Even assuming that Defendant Wilson is responsible, Plaintiff does not

8   provide evidence, let alone allege that the deprivation of property was "authorized." As noted

9   above, the negligent nor unauthorized intentional deprivations of property by a state employee

10  are not actionable under the Fourteenth Amendment.  Hudson v. Palmer, 468 U.S. 517, 533

11  (1984).

12          Accordingly, the Court will RECOMMEND that the Motion for Summary Judgment be

13  GRANTED with respect to Plaintiff's allegations of property deprivation against Defendant

14  Wilson.

15                        **C.  Supervisory Liability**

16          In his Amended Complaint, Plaintiff states that Defendant Newton "was aware of the

17  Warden's policy of placing inmates in ad/seg in retaliation for filing citizen complaints on staff

18  misconduct." (Amended Compl. at 7.)   Defendant's assert that Plaintiff is not entitled to relief

19  under a theory of respondeat superior because he fails to present evidence that either Defendants

20  Warden Huskey or Cpt. Newton, mandated a policy of retaliation for the filing of grievances

21  against staff.

22          A supervisor may be liable based on his or her personal involvement in the alleged

23  deprivation, or if there is a sufficient causal connection between the supervisor's alleged

24  wrongful conduct and the alleged deprivation, Hansen v. Black, 885 F.2d 642, 646 (9th

25  Cir.1989), but a "supervisor is only liable for constitutional violations of his subordinates if the

26  supervisor participated in or directed the violations, or knew of the violations and failed to act to

27  prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989), *citing* Ybarra v. Reno

28

1    Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir.1984). See also, Shaw v.

2    Stroud, 13 F.3d 791, 799 (4th Cir.1994) (supervisory liability only when (a) actual or

3    constructive knowledge of a pervasive and unreasonable risk of injury; (b) deliberate indifference

4    to or tacit authorization of the practice; and (c) an affirmative causal link between inaction and

5    the injury).

6         Supervisory officials may also be liable if they "implement a policy so deficient that the

7    policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional

8    violation.'' ' Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir.1991), *cert. denied,*

9    112 S.Ct. 972 (1992) (*quoting* Hansen v. Black, *supra,* 885 F.2d at 646, *in turn quoting*

10   Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir.1987); see also, Jane Doe A. v. Special School

11   District, 901 F.2d 642, 645 (8th Cir.1990) ("The individual defendants are subject to personal

12   liability only if it can be proved that they: (1) Received notice of a pattern of unconstitutional acts

13   committed by subordinates; (2) Demonstrated deliberate indifference to or tacit authorization of

14   the offensive acts; (3) Failed to take sufficient actions; and (4) That such failure proximately

15   caused injury.")

16        Defendants provide evidence that placement of Plaintiff in administrative segregation was

17   authorized by regulations and was for the purpose of ensuring the integrity of the investigation

18   into the alleged misconduct by Lt. Aviles *and* for Plaintiff's protection.[10] (Exh. A at 20-21, 23-

19   24, Motion; Exh. C, Motion.)   In addition, the evidence before the Court demonstrates that the

20   initial action was not taken by either Defendants Huskey or Newton but by Defendant Pina

21   because Plaintiff was deemed a threat to the "safety and security of the institution." (Exh. A at

22   21, Motion.)   Defendant Newton reviewed Defendant Pina's action within the 24 hour time

23   frame required by statute and concluded that Plaintiff's initial placement in ad/seg, in light of the

24   allegations of staff misconduct, was proper.  (Exh. A at 21 noting that Plaintiff be retained "in

25   ad/seg pending completion of Investigation.)   Defendant Huskey, acting as part of the ICC

26

27        [10]Plaintiff was repeatedly asked, in interviews connected with the investigation of the alleged misconduct,
     whether he was afraid or felt threatened by staff or other inmates as a result of this incident.  (Exh. A at 25, 26,
28   Motion.)

hearing signed the ICC initial review report stating that following the Committee's review on May 10, 2001, the Committee elected to retain Plaintiff in ad/seg *pending investigation and in order to maintain the integrity of the investigation.*  (Exh. A at 23, Motion)(emphasis added.) The form also indicates that Plaintiff agreed with the committee's action and understood his appeal rights. Id.  The evidence also shows that Plaintiff was released following the completion of the investigation.  (Exh. A at 3, 24, Motion; Amended Compl. at 6.)  The Court finds Defendant's have met their burden of establishing that Defendants Huskey and Newton's actions retaining Plaintiff in ad/seg was authorized by statute and was not pursuant to the implementation of a policy that itself was a repudiation of constitutional rights.  Accordingly, the burden now shifts to Plaintiff to establish the existence of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

        In his Opposition, Plaintiff argues that Defendant Newton is liable because his decision to retain Plaintiff in ad/seg was "improper" and that Defendant Huskey  "implement[ed] the policy of placing inmates in ad/seg pending investigations into staff misconduct."  (Opposition at 16-17.)  However, Plaintiff presents no evidence that the Defendants Warden Huskey or Cpt. Newton participated in, directed the violations, or knew of the violations and failed to act to prevent them. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989), *citing* Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir.1984).

        Accordingly, the Court will RECOMMEND that the Motion for Summary Judgment be granted on Plaintiff's allegation of supervisory liability

### D.  Qualified Immunity

        Finding no basis for liability on Plaintiff's retaliation, property deprivation and supervisory liability claims, the Court declines to address the issue of qualified immunity.

//

//

//

//

**E.  CONCLUSION AND RECOMMENDATION**

The Court HEREBY RECOMMENDS that the Motion for Summary Judgment be GRANTED, that Plaintiff's retaliation claim against Defendant Pina, the deprivation of property claim against Defendant Wilson and the supervisory liability claim against Defendants Huskey and Newton be DISMISSED, and that the Clerk of Court be DIRECTED to enter Judgment.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:    August 1, 2005**                     **/s/ Sandra M. Snyder**
icido3                                           UNITED STATES MAGISTRATE JUDGE